THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| CLAY JAMES CARTER,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS MARVIN KENISON, ZERA AUGUSTUS ROWLEY, CHASE NATHAN OLIVER, JUAB COUNTY, and JUAB COUNTY SHERIFF'S DEPARTMENT,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [ECF NO. 33] DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:24-cv-00515-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendants Travis Marvin Kenison, Zera Augustus Rowley, Chase Nathan Oliver, Juab County, and Juab County Sheriff's Department's Motion for Judgment on the Pleadings,[1] Plaintiff Clay James Carter's response brief,[2] and Defendants' reply.[3] Mr. Kenison, Mr. Rowley, and Mr. Oliver (the "Individual Defendants") are Sheriff's deputies employed by Juab County and the Juab County Sheriff's Office.[4] Mr. Carter, a private citizen, was arrested or detained by the Individual Defendants. Mr. Carter alleges that Defendants (1) arrested him unlawfully, (2) used excessive force, and (3) that observing officers failed to intervene despite apparent constitutional violations.[5] Mr. Carter brings these claims under the

---

[1] Defs.' Mot. for J. on the Pleadings ("MJP"), ECF No. 33, filed July 23, 2025.
[2] Opp'n to Defs.' Mot. for J. on the Pleadings ("Opp."), ECF No. 39, filed August 27, 2025.
[3] Reply in Supp. of Defs.' Mot. for J. on the Pleadings, ECF No. 44, filed September 12, 2025.
[4] Compl. ¶¶ 6–8.
[5] *Id*. ¶¶ 112–189.

United States Constitution and the Utah Constitution.[6] Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[7]

## BACKGROUND[8]

This civil action stems from an incident between Mr. Carter and the Individual Defendants in the evening on September 30, 2022. Earlier that day, Deputy Rowley and Mr. Carter were at Janet Carter's land.[9] Janet Carter is Mr. Carter's mother.[10] Mr. Carter told Deputy Rowley that he had driven down the country road adjacent to Ms. Carter's land to see if certain horses were visible because a third party told him that the horses were loose and might run away.[11] Mr. Carter owns or has potential legal claims to some of the horses that were reportedly loose.[12]

At some point during the day, Deputy Rowley allegedly told Ms. Carter that "if the Sheriff's Department could sue Mr. Carter for harassment, they would" and that "he had held a grudge against Mr. Carter for years."[13]

In the evening, Mr. Carter attended a local rodeo in Nephi, Utah at the Juab County Fairgrounds.[14] Deputies Kenison, Rowley, and Oliver were at the rodeo, in uniform, to provide

---

[6] *Id.*

[7] *See* DUCivR 7-1(g).

[8] Because the court is deciding a motion for judgment on the pleadings, the following factual allegations taken from Mr. Carter's complaint are treated as true.

[9] Compl. ¶ 46.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶¶ 101–102.

[14] *Id.* ¶ 13.

security and first responder services as part of the rodeo's contract with the Juab County Sheriff's Department.[15]

The husband of a local victim rights advocate saw Mr. Carter and called Deputy Rowley to tell him that Mr. Carter was at the rodeo.[16] Deputy Rowley, Deputy Kenison, and Deputy Oliver then arrived at Mr. Carter's seat and ordered Mr. Carter to come with them.[17] Mr. Carter, without resisting, walked with the deputies to the rodeo's exit.[18]

There, Deputy Rowley asked Mr. Carter about a horse missing from Janet Carter's land.[19] Mr. Carter stated that he did not know where the missing horse was.[20] Deputy Rowley stated "Well, the sorrel [horse] is gone."[21] Mr. Carter stated, "I told you I was down there looking for it."[22] Deputy Rowley asked to confirm that Mr. Carter admitted to being "down there" earlier that day.[23] Mr. Carter again stated that he "went down there looking for it."[24]

At that point, Deputy Rowley instructed Mr. Carter to turn around and put his hands behind his back, grabbed Mr. Carter's wrist, and handcuffed him.[25] The complaint alleges: "One of the deputies struck Mr. Carter from behind."[26] "Deputies Rowley, Kenison, and Oliver then slammed Mr. Carter against a food truck."[27] "Deputy Rowley, using his knee, struck Mr. Carter

---

[15] *Id.* ¶¶ 14–16.
[16] *Id.* ¶¶ 21–22.
[17] *Id.* ¶ 24.
[18] *Id.* ¶¶ 32, 36, 38, 41, 51.
[19] *Id.* ¶¶ 44, 52, 54.
[20] *Id.* ¶ 52.
[21] *Id.* ¶ 54.
[22] *Id.* ¶ 55.
[23] *Id.* ¶ 56.
[24] *Id.* ¶ 57.
[25] *Id.* ¶ 59.
[26] *Id.* ¶ 60.
[27] *Id.* ¶ 61.

in the knee."[28] "Deputies Kenison and Oliver twisted Mr. Carter's arm."[29] Despite protests from

Mr. Carter, "Deputy Rowley repeatedly struck Mr. Carter's knee again, and deputies Kenison

and Oliver continued to twist Mr. Carter's arm."[30] "During this altercation Deputies Kenison and

Oliver did not attempt to stop Deputy Rowley from striking Mr. Carter's knee" or arm.[31] Mr.

Carter initially "resisted the sudden physical action [on reflex], but immediately restrained

himself and did not resist the arrest."[32]

    After this altercation, the deputies took Mr. Carter to a police truck and sat him in the

back seat.[33] Deputy Rowley stated that Mr. Carter had been "belligerent" and that he had enough

"probable cause" to "detain and interview him."[34] A deputy also stated that Mr. Carter had been

advised about what he was accused of doing.[35] The deputies exchanged additional questions and

statements with Mr. Carter and then read Mr. Carter his Miranda rights.[36] The deputies claimed

they had a basis for the arrest because Mr. Carter had been down where the horses were kept and

now the Sorrel Horse was gone.[37] Mr. Carter continued to admit that he had been down there, but

said that he did not see any of the horses.[38]

---

[28] *Id.* ¶ 62.
[29] *Id.* ¶ 63.
[30] *Id.* ¶ 64.
[31] *Id.* ¶¶ 65–66.
[32] *Id.* ¶ 67.
[33] *Id.* ¶¶ 75, 84.
[34] *Id.* ¶¶ 79, 81, 85.
[35] *Id.* ¶ 77.
[36] *Id.* ¶ 87.
[37] *Id.* ¶ 69.
[38] *Id.* ¶ 71.

The deputies then took Mr. Carter to the local jail and continued to question him.[39] The deputies claimed that Mr. Carter's belligerence justified the arrest.[40] But the deputies also admitted "multiple times" that they knew Mr. Carter was never a threat to them. Deputy Rowley stated "I'm not afraid of you, seriously Clay" and "I know you wouldn't [hurt me]."[41] The deputies continued to question Mr. Carter despite Mr. Carter asserting his Miranda rights to an attorney.[42] The deputies claimed during the questioning that they had sufficient legal and factual basis to charge Mr. Carter.[43] But ultimately, the deputies released Mr. Carter without filing charges.[44]

After the interrogation, the deputies drove Mr. Carter back to the rodeo.[45] Despite Mr. Carter's request to drop him off close to the stands, the deputies pulled over far from the stands.[46] They explained that they did not want anyone to see them dropping him off.[47]

During the arrest, Mr. Carter's wrist was broken, and he experienced pain and swelling in his knee.[48] The injuries allegedly required surgery and will likely require more surgeries.[49]

## STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[50] The court

---

[39] *Id.* ¶ 88.
[40] *Id.* ¶ 90.
[41] *Id.* ¶ 90.
[42] *Id.* ¶ 96.
[43] *Id.* ¶ 97.
[44] *Id.* ¶ 99.
[45] *Id.* ¶ 103.
[46] *Id.* ¶ 104.
[47] *Id.* ¶ 104.
[48] *Id.* ¶ 106.
[49] *Id.* ¶ 107.
[50] Fed. R. Civ. P. 12(c).

evaluates a motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[51] The court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same."[52]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[53] Thus, to survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[54] A claim 'has facial plausibility' if the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[55] But "[t]he court does not accept as true legal conclusions that are couched as factual allegations,"[56] as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[57]

## DISCUSSION

Defendants argue that (1) Plaintiff's state law claims are barred; (2) Juab Country Sheriff's Office is not a legal entity capable of being sued; (3) the body cam footage clearly

---

[51] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) (abrogated on other grounds)).
[52] *Id.* (quoting *Park Univ. Enters., Inc.*, 442 F.3d at 1244).
[53] *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff argues that a complaint can be dismissed "only when the movant can prove there is no set of facts in support of the claims that would entitle the opposing party to relief." Opp. 3. This has not been the pleadings standard since the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[55] *VDARE Found. v. Colorado Springs*, 11 F.4th 1151, 1158–59 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).
[56] *Murphey v. Mid-Century Ins. Co.*, No. 13-2598, 2014 WL 2619073, at *7 (D. Kan. June 12, 2014) (citing *Ashcroft*, 556 U.S. at 678).
[57] *Ashcroft*, 556 U.S. at 678.

contradicts the claims of unlawful arrest, excessive force, and failure to intervene; (4) the

Individual Defendants have qualified immunity; (5) Plaintiff failed to state a claim for municipal

liability; and (6) Plaintiff failed to state a claim for punitive damages. The court considers each

of these in turn.

## I.    Plaintiff's Concessions

Plaintiff concedes his claims based on state law and his claims against Juab County

Sheriff's Department.[58] Accordingly, the court dismisses Plaintiff's fourth, fifth, sixth, and

seventh causes of action and all claims against Juab County Sheriff's Department.

## II.    Body Cam Footage

As a threshold matter, the parties dispute whether the court can consider the body cam

footage at this stage. While a court generally cannot consider any matter outside of the pleadings

in a 12(c) motion,[59] Defendants attached the body cam footage to their answer and thus argue

that it is not outside of the pleadings. But in a 12(c) motion, courts "accept all facts pleaded by

the *non-moving* party as true and grant all reasonable inferences from the pleadings in favor of

the same."[60] Although the court considers attached documents as part of the pleading,[61] here, the

body cam footage is attached to the *moving* parties' pleading. The Plaintiff is the *non-moving*

party. Thus, the court accepts all facts pleaded by the Plaintiff as true, and does not consider the

Defendants' answer, including their attached body cam footage.

---

[58] Opp. 6 ("Plaintiff will not oppose Defendant's motion as it applies to any claims based on state law.").
[59] Fed. R. Civ. P. 12(d).
[60] *Colony Ins. Co.*, 698 F.3d at 1228 (quoting *Park Univ. Enters., Inc.*, 442 F.3d at 1244) (emphasis added).
[61] *Park Univ. Enters., Inc.*, 442 F.3d at 1244.

7

Beyond that, as a general matter, answers are not the place for presenting evidence.[62] Under Federal Rule of Civil Procedure 8, "[i]n responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."[63] This does not include presenting evidence. Indeed, it would be contrary to the purposes of 12(b) and 12(c) motions for a defendant to be able to present evidence simply by including it as an exhibit to their answer. Summary judgment is the proper stage for a court to consider the evidence of all parties. In fact, Defendants' cited cases considered video recordings at the summary judgment stage, not at the pleadings stage.[64]

All that said, the court can consider "documents incorporated by reference into the complaint" even if they are not attached to the complaint.[65] Courts can consider these "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[66] This includes video and audio recordings.[67] But here, the complaint never

---

[62] *But see* Fed. R. Civ. P. 10(c) "Adoption by Reference; Exhibits. . . . A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The body cam footage, however, is not a written instrument, such as a written contract.

[63] Fed. R. Civ. P. 8.

[64] *See Scott v. Harris*, 550 U.S. 372, 372 (2007); *Clerkley v. Holcomb*, 121 F.4th 1359, 1362 (10th Cir. 2024); *Mecham v. Frazier*, 500 F.3d 1200, 1202 (10th Cir. 2007).

[65] *Slater v. A.G. Edwards & Sons*, 719 F.3d 1190, 1196 (10th Cir. 2013).

[66] *Waller v. Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

[67] *See*, *e.g., Montoya v. Vigil*, 898 F.3d 1056, 1060 n.2 (10th Cir. 2018) (considering an interrogation video attached to the complaint in connection with a motion to dismiss); *Wright v. City of Ponca City*, No. 22-6137, 2023 WL 5765848, at *1 n.2 (10th Cir. Sept. 7, 2023) (considering a police bodycam video); *Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, at *2 (10th Cir. Nov. 10, 2021) ("[W]e may consider the body-cam videos and still frame excerpts because they were referred to in the complaint and neither party disputes their authenticity."); *Hoskins v. Withers*, No. 2:20-cv-749, 2022 WL 3576276, at *3 (D. Utah Aug. 18, 2022) (a court "may consider documents referred to in the complaint . . . . This can include videos."); *Hardman v. Roosevelt City*, No. 2:18-cv-00785, 2019 WL 2578586, at *3 n.4 (D. Utah June 24, 2019) ("In evaluating a motion to dismiss, the Court is

incorporates or mentions the body cam footage at all. As another court explained, "simply

alleging facts related to the content of the [] recordings is not enough to incorporate by

reference."[68] While the body cam footage records *facts* central to Plaintiff's claim, the body cam

footage *itself* is not central to Plaintiff's claim nor referenced in the complaint. Here, the body

cam footage is for consideration at summary judgment—when it can be considered under the

proper standard and in light of any other evidence that may be gathered during discovery.

## III.    Qualified Immunity

Defendants next assert that the Individual Defendants have qualified immunity. To

overcome a qualified-immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the

official violated statutory or constitutional rights, and (2) that the right was "clearly established"

at the time of the challenged conduct.'"[69] The court may consider the prongs in either order. If a

plaintiff fails to establish either prong of the standard, the defendant prevails.[70]

"[T]he doctrine of qualified immunity shields officers from civil liability so long as their

conduct 'does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"[71] The Supreme Court instructs that "[i]t is not enough

that a rule be suggested by then-existing precedent, the 'contours of the law must be so well

defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he

---

entitled to consider the recording, since the interrogation is referenced in [the plaintiff's] proposed amended
complaint and is central to his claims").
[68] *Lewis v. Exec. Dining LLC*, No. 4:20-cv-01261, 2021 WL 3847136, at *4 (E.D. Mo. Aug. 27, 2021) (internal
quotation marks and citation omitted).
[69] *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).
[70] *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).
[71] *Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

confronted.'"[72] "Such specificity is 'especially important in the Fourth Amendment context,' where it is 'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'"[73] That said, "officials can still be on notice that their conduct violates established law even in novel factual circumstances"[74] as long as the "[e]xisting law . . . placed the constitutionality of the officer's conduct 'beyond debate.'"[75] Only government officials who are "plainly incompetent or . . . who knowingly violate the law" are not protected.[76]

> Plaintiff's entire argument on the "clearly established" requirement appears below:
>
> Second, contrary to Defendant's claim that Plaintiff does not identify any "clearly established" law or precedent that is particularized to the facts of this case, Plaintiff clearly and overtly cites established law in their complaint for this very purpose including case law from the 10th Circuit: "Among other things, Defendants unlawfully detained and arrested Mr. Carter, used excessive force in making the arrest, *Graham v. Connor*, 490 U.S. 389, 396 (1989); and failed to intervene. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) ("It is 'clearly established' that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.")." (Compl. ¶11). The Plaintiff thus also satisfies the second prong.

In short, Plaintiff summarily cites two cases. He does not discuss the facts of those cases. He does not compare the facts of those cases to his own. He makes no argument at all about why they put "the constitutionality of the officer's conduct 'beyond debate.'"[77] As a general matter, it is not the court's responsibility to create arguments for the parties. And that certainly applies regarding qualified immunity, where the Supreme Court and the Tenth Circuit have made it plain

---

[72] *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).
[73] *Id.* at 12–13.
[74] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).
[75] *Wesby*, 538 U.S. at 63 (quoting *Ashcroft*, 563 U.S. at 741).
[76] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[77] *Wesby*, 538 U.S. at 63 (quoting *Ashcroft*, 563 U.S. at 741).

that "the onus is on the plaintiff."[78] In other words, the question is not whether Plaintiff possibly might be able to carry his burden, but whether he actually did. As a result, the court necessarily must conclude that Plaintiff failed to meet his burden to overcome the Defendants' qualified immunity defense.

Accordingly, the court dismisses Plaintiff's first, second, and third causes of action against the Individual Defendants.

## IV.   *Monell* Liability

Defendants next assert that Juab County is not liable under the *Monell* test. Municipalities are liable in a § 1983 action only when their policies are the "moving force" behind the alleged constitutional violation.[79] "To establish municipal liability, a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged."[80] A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately

---

[78] *Quinn*, 780 F.3d at 1004 (*quoting Ashcroft*, 563 U.S. at 735.
[79] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978).
[80] *Hinton v. Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."[81]

Here, Plaintiff argues that the complaint shows an "informal municipal custom of targeting and harassing Mr. Carter."[82] But that is not enough. An informal custom must be "continuing, persistent, and widespread."[83] Indeed, the alleged informal custom must be "so permanent and well settled as to constitute a custom or usage with the force of law."[84] Plaintiff only presents factual allegations about one instance of alleged harassment. This single event does not show a widespread custom or pattern that Juab County Sheriff's deputies abuse their police power for personal grudges.

Plaintiff's complaint also summarily alleges that Juab County failed to properly train the Individual Defendants, but it provides no factual allegations to support that legal conclusion. To establish a policy or custom of failing to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."[85] Thus, a plaintiff "must identify a specific deficiency" in the municipality's training program.[86] Here, Plaintiff has not done so.

---

[81] *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989)) (internal quotation marks omitted).
[82] Opp. 12.
[83] *Carney v. Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008).
[84] *Lucas v. Turn Key Clinics*, 58 F.th 1127, 1145 (10th Cir. 2023) (cleaned up).
[85] *Canton v. Harris*, 489 U.S. 378, 390–91 (1989).
[86] *Keith v. Koerner*, 843 F.3d 833, 839 (10th Cir. 2016).

12

Accordingly, Plaintiff's claims against Juab County are dismissed.

## V.    Punitive Damages Claim

Defendants lastly challenge Plaintiff's claim for punitive damages. Because the individual claims have been dismissed, the court need not address the punitive damages issue.

**ORDER**

Defendants' Motion for Judgment on the Pleadings[87] is GRANTED. Plaintiff's Amended Complaint is dismissed without prejudice. If Plaintiff seeks leave to amend his complaint, he must so move within 30 days.

Signed November 10, 2025.

BY THE COURT

_____
David Barlow
United States District Judge

---

[87] ECF No. 33.